**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ZRG, INC., | ) | Case No. 25-40464-NHL |
| 90 NASSAU STREET LLC, | ) | Case No. 25-41126-NHL |
| 385 GREENWICH STREET LLC | ) | Case No. 25-41127-NHL |
| | ) | |
| Debtors. | ) | Jointly Administered |

**RESPONSE OF JONES LANG LASALLE AMERICAS, INC. TO DEBTORS' POST-CONFIRMATION OMNIBUS OBJECTION TO VARIOUS CLAIMS**

Creditor Jones Lang LaSalle Americas, Inc. ("JLL") respectfully submits this response to the Debtors' omnibus claims objection [Docket No. 95] (the "Objection") and states:

1.     On January 29, 2025 (the "ZRG Petition Date"), ZRG, Inc. ("ZRG") filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").

2.     On March 6, 2025 (the "Petition Date"), ZRG's subsidiaries 90 Nassau Street LLC ("Nassau") and 385 Greenwich Street LLC ("Greenwich" and, together with ZRG and Nassau, collectively, the "Debtors") filed bankruptcy petitions under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  None of the Debtors listed a debt to JLL in their schedules of claims or otherwise provided JLL notice of their bankruptcy filing as provided for by the Federal Rules of Bankruptcy Procedure.

3.     As of the Petition Date, JLL and Debtors Nassau and Greenwich were parties to a November 13, 2023 agreement (the "Agreement"), pursuant to which Nassau and Greenwich retained JLL as their exclusive agent to market and sell the real property owned by Nassau and located at 90 Nassau Street, New York, New York (the "Nassau Property") and the real property owned by Greenwich and located at 385 Greenwich Street, New York, New York

(the "Greenwich Property"). The Agreement provides that upon sale of the Nassau Property, JLL will be entitled to payment of a commission of 2.75% of the gross sale consideration provided to purchase the Nassau Property. *See* Agreement, ¶ 5.

4. Per the terms of the Agreement, JLL marketed the Nassau Property and the Greenwich Property (collectively, the "Properties") to prospective purchasers. Through these efforts, JLL procured New Aim Realty, LLC ("New Aim") as a purchaser of the Nassau Property. On June 7, 2024, New Aim entered into an Agreement of Purchase and Sale with the Nassau for the purchase of the Nassau Property (the "Purchase Agreement") for $10,530,000.

5. Following the Petition Date, on May 21, 2025, the Debtors sought to terminate the Asset Purchase Agreement with New Aim. However, only six days later, on May 27, 2025, the Debtors filed a Notice of Stalking Horse Offer with respect to the Nassau Property [Docket No. 45] (the "Stalking Horse Notice"). In the Stalking Horse Notice, the Debtors disclosed that "Bernart Capital, LLC ('Bernart'), ***which is an affiliate of New Aim Realty LLC***, [is] to act as a stalking horse purchaser for the [Nassau Property]. . . ." *See* Stalking Horse Notice (emphasis supplied).

6. On June 18, 2025, the Debtors filed their Notice of Sale Results, confirming the sale of the Nassau Property to New Aim's affiliate, Bernart Capital, LLC ("Bernart"). [Docket No. 50] (the "Notice of Sale Results"). The Notice of Sale Results includes a copy of the Stalking Horse Asset Purchase Agreement between Bernart and the Debtors, which states that "[e]ach party represents and warrants to the other that they have not dealt with any broker in

ACTIVE\4917-7364-0048.v1-10/15/25

connection with this post-petition sale with the claims, if any, of the pre-petition broker (JL&L) [sic] to be addressed by the Bankruptcy Court." Notice of Sale Results, Ex. A., § 16.[1]

7. On June 23, 2025, the Debtors filed the Declaration of Kevin J. Nash Regarding Bidding Results & Marketing Efforts for the Nassau Property. [Docket No. 54] (the "Nash Declaration"). In the Nash Declaration, Mr. Nash describes the marketing efforts undertaken with respect to the Nassau Property, stating that the Debtors provided notice of the bidding procedures previously approved by the Bankruptcy Court to "all potential bidders previously identified," (presumably meaning bidders identified or procured by JLL) and states that "[p]rior to the Bid Deadline, the Debtor received one bid from Bernart Capital LLC ('BC') in the total amount of $10,250,000. Bernart Capital LLC is an affiliate of New Aim Realty LLC (New Aim'), which is a party to a pre-petition contract to purchase the Nassau Property. BC's bid supersedes New Aim's pre-petition contract." Nash Declaration, ¶¶ 3, 6.

8. On July 11, 2025, the Bankruptcy Court entered an order confirming the Debtors' proposed chapter 11 plan, which, *inter alia*, provided for the rejection of all executory contracts that had not previously been assumed [Docket No. 84] (the "Confirmation Order").

9. On that same date, the Bankruptcy Court also entered an order granting the Debtors' motion to deem the prior asset purchase agreement with New Aim terminated [Docket No. 85] (the "Termination Order"), in which the Court based its entry of the Termination Order on "it appearing that an affiliate of New Aim was designated the successful bidder of the subject property" (*See* Termination Order, at 1) and an order approving the sale of the Nassau Property to Bernart [Docket No. 87].

---

[1] Given this statement that the claims of JLL would be addressed by the Bankruptcy Court, it is surprising that the Debtors did not include a claim designated as contingent, unliquidated or

ACTIVE\4917-7364-0048.v1-10/15/25

10. On August 8, 2025, the Debtors and Bernart closed the sale of the Nassau Property. *See* Docket No. 95.

11. On August 11, 2025, JLL filed a claim in the amount of $281,875.00 against Nassau (the "JLL Claim") for the amounts that would have been due to JLL under the Agreement if it had not been rejected. The JLL Claim, a copy of which is attached hereto as Exhibit A, has been docketed as Claim No. 13 in Nassau's bankruptcy case.[2]

12. On September 8, 2025, the Debtors filed their Objection, asserting that:

- The Agreement "apparently expired on April 17, 2024";

- the Debtors did not retain JLL as a postpetition professional; and

- termination of the New Aim Asset Purchase Agreement terminated JLL's right to payment.

*See* Objection, ¶ 6. However, as discussed below, the Debtors' objections to the JLL Claim lack merit and the JLL Claim should be allowed.

A.      The Agreement Had Not Expired as of the Petition Date

13. Paragraph 1 of Agreement states that "[t]he term of this agreement shall commence on the date hereof [November 17, 2023] and shall continue until April 17, 2024 and shall thereafter continue for successive monthly periods until one party gives to the other 30 days written notice of cancellation. Each party will have the right to terminate this agreement without cause upon thirty (30) days prior written notice to the other party for any reason or no reason."

_____

disputed in Nassau's schedules or otherwise provide JLL with notice of Nassau's bankruptcy filing and the claims bar date as provided for by the Federal Rules of Bankruptcy Procedure.

[2] The Debtors excluded the exhibits to each of the claims subject to the Objection from the appendix the Debtors filed in support of the Objection. Consequently, the Addendum provided in support of the JLL Claim, which also provided a copy of the Agreement, was not included.

ACTIVE\4917-7364-0048.v1-10/15/25

*See* Agreement, ¶ 1  Based on this language, the Debtor alleges that "JLL's alleged brokerage agreement apparently expired on April 17, 2024."  Objection, ¶ 6.

14.     While the Agreement provides that the initial term would expire on April 17, 2024, the Agreement ***expressly*** provides that the Agreement will remain in force after that date unless and until either party gives the other 30 days' notice of its cancellation.  *See* Agreement, at ¶ 1.

15.     As set forth in the Declaration of Jonathan Hageman (the "<u>Hageman Declaration</u>"), attached hereto as Exhibit B, neither the Debtors nor JLL ever provided written notice of cancellation of the Agreement, and the Debtors continued to utilize JLL's brokerage services with respect to both the Nassau Property and the Greenwich Property on and after April 17, 2024 through the Petition Date, almost eleven months later.  *See* Hageman Declaration, at ¶¶ 7, 9.

16.     Furthermore, representatives of New Aim and Bernart continued to contact JLL about the Nassau Property and to request that JLL facilitate access to the Nassau Property well after the Petition Date, which JLL continued to do in accordance with the instructions provided by the Debtors.  *See* Hageman Declaration at ¶¶ 7, 8.

17.     Even assuming, *arguendo*, that the Agreement terminated on the Petition Date, the Agreement provides protections that extend expressly beyond its cancellation or termination to protect JLL's right to payment for procuring a purchaser for either of the Properties. Specifically, the Agreement states:

> JLL agrees within fifteen (15) business days after the expiration of the listing to provide Seller with a list of no more than fifteen (15) names of persons or entities who during the term have: (a) inspected the Properties, (b) been contacted by JLL regarding the sale of any of the Properties, or (c) offered to purchase the Properties. If within 180 days after the expiration or earlier termination of the listing term a contract is signed or negotiations continue and ultimately lead to a

ACTIVE\4917-7364-0048.v1-10/15/25

signed contract for the sale of the Properties to a person on said list (or an entity with whom said person is affiliated in any way), JLL shall be entitled to the commissions provided for in paragraph five (5) of this agreement.

Agreement, ¶ 6.[3]

B.    The Debtors' Decision Not to Retain JLL in Their Bankruptcy Cases Does Not Prevent Recovery on the JLL Claim

18.    With a willing purchaser already in hand, the Debtors made the strategic decision not to seek authority to retain JLL as the postpetition real estate broker for the Debtors' estates, thereby escaping the obligation to pay JLL the commission due under the Agreement as an administrative expense pursuant to sections 330(a) and 503(b)(2) of the Bankruptcy Code for the real estate transaction that funded the Debtors' chapter 11 plan. Nevertheless, because the Agreement was not terminated prior to the Petition Date and was instead only rejected under the Plan and Confirmation Order, JLL is entitled to a general unsecured claim under section 502(g)(1) of the Bankruptcy Code for the commission it would have received on the sale of the Nassau Property but for the rejection of Agreement. Furthermore, neither section 327 nor any other section of the Bankruptcy Code prevents payment of such a claim.

19.    As discussed above, the Agreement provides for a 180-day period following termination during which JLL may still qualify for payment from a successful sale of the Properties. To the extent that, per section 365(g) of the Bankruptcy Code, the Agreement is deemed to have been terminated as of the Petition Date, the sale of the Nassau Property to an affiliate of the purchaser procured by JLL closed well within the 180-day post-termination period

---

[3] At all times between the Petition Date and the closing of the sale of the Nassau Property, Nassau was a party to a purchase agreement with New Aim and/or Bernart, obviating the need for JLL to identify these entities to Nassau upon any termination of the Agreement. Furthermore, the Debtors did not serve the Plan upon JLL or otherwise provide notice of their rejection of the Agreement by operation of the Plan, so JLL was not on notice of any obligation to re-identify these affiliated purchasers in writing.

ACTIVE\4917-7364-0048.v1-10/15/25

provided under paragraph 6 of the Agreement.  Furthermore, in the Stalking Horse Notice, the Debtors acknowledge both that Bernart is an affiliate of New Aim, and that Bernart's offer represents a continuation of the Debtors' prior negotiations with New Aim, stating that the Bernart's offer is "based upon *a revised purchase price* of $10,250,000." Stalking Horse Notice (emphasis supplied).

20.     Consequently, it is beyond dispute that JLL brought the Debtors a purchaser whose affiliate purchased the Nassau Property, which, in turn, provided the very consideration by which the Debtors funded and effectuated their Plan.  While the Debtors have now received the full benefit of their bargain with JLL under the Agreement, the Debtors' rejection of the Agreement has deprived JLL of the commission JLL was entitled to under the Agreement. While there is little doubt that, had JLL been retained in the Debtors' cases, JLL would have received that benefit as an administrative expense, in light of the Debtors' decision to reject the Agreement, JLL is entitled to recover on an unsecured claim in the amount of the commission that would have been paid if the Agreement had not been rejected.

WHEREFORE, Jones Lang LaSalle Americas, Inc. respectfully requests that this Court enter an order (1) denying the Objection with respect to Claim No. 13 against 90 Nassau Street, LLC, (2) granting JLL an allowed general unsecured claim against Nassau in the amount of $281,875.00, and (3) granting such other relief as this Court deems just.

ACTIVE\4917-7364-0048.v1-10/15/25

Dated: October 15, 2025

Respectfully submitted,

/s/ Jeffrey Chubak
Jeffrey Chubak
Amini LLC
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
jchubak@aminillc.com

Jeremy C. Kleinman (pro hac vice forthcoming)
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue
Chicago, IL 60611
(312) 840-7000
jkleinman@burkelaw.com
Attorneys for Creditor Jones Lang LaSalle
Americas, Inc.

ACTIVE\4917-7364-0048.v1-10/15/25