| **Fill in this information to identify the case:** |
|---|
| Debtor 1   90 Nassau Street LLC |
| Debtor 2 |
| (Spouse, if filing) |
| United States Bankruptcy Court   **Eastern District of New York** |
| Case number:  **25–41126** |

FILED
**U.S. Bankruptcy Court**
**Eastern District of New York**
8/11/2025

**Paul Dickson, Clerk**

## Official Form 410
**Proof of Claim**                                                                                                    04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

### Part 1: Identify the Claim

| | | |
|---|---|---|
| 1. **Who is the current creditor?** | Jones Lang LaSalle Americas, Inc. | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. **Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes. From whom? | |
| 3. **Where should notices and payments to the creditor be sent?** <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> Jones Lang LaSalle Americas, Inc. <br> Name <br><br> c/o Jeremy C. Kleinman <br> Burke, Warren, MacKay & Serritella, P.C. <br> 330 North Wabash Ave., Suite 2100 <br> Chicago, IL 60611–3607 <br><br> Contact phone    (312) 840–7032 <br> Contact email    jkleinman@burkelaw.com <br><br> Uniform claim identifier (if you use one): | **Where should payments to the creditor be sent?** (if different) <br><br> Name <br><br><br> Contact phone <br> Contact email |
| 4. **Does this claim amend one already filed?** | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____ <br> MM / DD / YYYY | |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes. Who made the earlier filing? | |

Official Form 410                                              Proof of Claim                                              page 1

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**
☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?** $ 281875.00

**Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as healthcare information.

Contract rejection damages

**9. Is all or part of the claim secured?**
☑ No
☐ Yes. The claim is secured by a lien on property.
**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____
**Amount of the claim that is secured:** $ _____
**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

Official Form 410        Proof of Claim        page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply*: | **Amount entitled to priority** |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |
| | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | |

### Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    8/11/2025
                   MM / DD / YYYY

/s/ Jeremy C. Kleinman

Signature

Print the name of the person who is completing and signing this claim:

Name: Jeremy C. Kleinman
First name    Middle name    Last name

Title: Counsel to Jones Lang LaSalle Americas, Inc.

Company: Burke, Warren, MacKay & Serritella, P.C.

Identify the corporate servicer as the company if the authorized agent is a servicer

Address: 330 North Wabash Avenue, Suite 2100
Number   Street
Chicago, IL 60611–3607
City   State   ZIP Code

Contact phone: (312) 840–7032    Email: jkleinman@burkelaw.com

## ADDENDUM TO PROOF OF CLAIM OF
## JONES LANG LASALLE AMERICAS, INC.

Jones Lang LaSalle Americas, Inc. ("JLL"), hereby asserts a claim of not less than $281,875.00 (the "Claim") against 90 Nassau Street LLC (the "Debtor") for amounts due resulting from the rejection of the November 17, 2023 letter agreement between JLL, the Debtor and the Debtor's affiliate, 385 Greenwich Street LLC (the "Agreement"), which was rejected by operation of the confirmed chapter 11 plan of the Debtor, its affiliate 385 Greenwich Street LLC ("Greenwich") and their sole member, ZRG, Inc. ("ZRG" and, with the Debtor and Greenwich, collectively, the "Debtors"). A copy of the Agreement is attached hereto as Exhibit A.

1. On November 17, 2023, the Debtor, Greenwich and JLL entered into the Agreement, appointing JLL as the sole agent with the exclusive right to market the Debtor's real property located at 90 Nassau Street, New York, NY (the "Nassau Property") and Greenwich's property located at 385 Greenwich Street (the "Greenwich Property") on behalf of the Debtor and Greenwich, respectively. Per the terms of the Agreement, JLL marketed the Nassau Property and the Greenwich Property (collectively, the "Properties") to prospective purchasers. As a result of these efforts, JLL procured New Aim Realty, LLC ("New Aim") as a purchaser for the Nassau Property. On June 7, 2024, New Aim entered into an Agreement of Purchase and Sale with the Debtor for the purchase of the Nassau Property (the "Purchase Agreement") for $10,530,000.

2. On January 29, 2025, ZRG filed its chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). On March 9, 2025 (the "March Petition Date"), the Debtor and Greenwich each filed a chapter 11 petition in the Bankruptcy Court. As of the March Petition Date, neither the Debtor, nor

ACTIVE\4925-8145-0075.v1-8/8/25

Greenwich, nor JLL had terminated the Agreement. Nevertheless, the Debtor did not list JLL as a creditor, did not include the Agreement on Schedule G of its Schedules or otherwise serve JLL with notice of either its bankruptcy filing or any subsequent filing or order entered in the Debtors' bankruptcy cases.

3.      On May 21, 2025, the Debtors filed a motion seeking an order deeming the Purchase Agreement terminated by reason of an alleged failure of a condition precedent or, alternatively, approving its rejection.

4.      Six days later, on May 27, 2025, the Debtors filed a Notice of Stalking Horse Offer with respect to the Nassau Property, stating that "Bernart Capital, LLC ('Bernart'), *which is an affiliate of New Aim Realty LLC*, [is] to act as a stalking horse purchaser for the Nassau Debtor's real property located at 90 Nassau Street, New York, NY (the 'Nassau Property') based upon *a revised purchase price* of $10,250,000." (emphasis supplied).

5.      On June 18, 2025, the Debtors filed their Notice of Sale Results, confirming the sale of the Nassau Property to New Aim's affiliate, Bernart Capital, LLC.

6.      On July 11, 2025, the Agreement was rejected under the terms of the Debtors' confirmed plan.

7.      Because (i) JLL procured New Aim as a purchaser for the Nassau Property, and (ii) the Debtor sold the Nassau Property to New Aim's affiliate, JLL would have been entitled to payment of a 2.75% commission on the gross sale price of the Nassau Property but for the rejection of the Agreement. Consequently, JLL is entitled to payment of not less than $281,875 (2.75% of the gross purchase price ultimately paid for the Nassau Property) as a result of the rejection of the Agreement.

ACTIVE\4925-8145-0075.v1-8/8/25

8.      Even if the Debtor had terminated the Agreement on the March Petition Date, paragraph 6 of the Agreement provides JLL with a right to payment of the 2.75% commission in the event that the Nassau Property is sold within 180 days thereafter to a previously interested buyer or an affiliate of such buyer:

> JLL agrees within fifteen (15) business days after the expiration of the listing to provide Seller with a list of no more than fifteen (15) names of persons or entities who during the term have: (a) inspected the Properties, (b) been contacted by JLL regarding the sale of any of the Properties, or (c) offered to purchase the Properties. If within 180 days after the expiration or earlier termination of the listing term a contract is signed or negotiations continue and ultimately lead to a signed contract for the sale of the Properties to a person on said list (or an entity with whom said person is affiliated in any way), JLL shall be entitled to the commissions provided for in paragraph five (5) of this agreement.

9.      Here, JLL had procured New Aim as a buyer prior to the Petition Date and the Debtor sold the Nassau Property to New Aim's affiliate.

10.     JLL reserves the right to amend this Claim at any time to include any additional amounts it determines to be due and owing from the Debtor, including attorneys' fees incurred by JLL to the extent due under the Agreement.

# EXHIBIT A



November 17th, 2023

Jones Lang LaSalle Americas, Inc.
330 Madison Avenue
New York, New York 10017

Re: : 90 Nassau Street (Block: 78 / Lot: 43), & 385 Greenwich Street (Block: 188 / Lot: 9), New York, New York (the "Properties")

Ladies and Gentlemen:

We, the undersigned ("Seller"), hereby appoint Jones Lang LaSalle Americas, Inc. ("JLL") as our sole agent and grant to JLL the exclusive right to sell all or any portion of or interest in the above referenced Properties.

JLL's appointment as our sole and exclusive agent shall be upon the following terms and conditions:

1. The term of this agreement shall commence on the date hereof and shall continue until April 17th, 2024 and shall thereafter continue for successive monthly periods until one party gives to the other 30 days written notice of cancellation. Each party will have the right to terminate this agreement without cause upon thirty (30) days prior written notice to the other party for any reason or no reason.

2. JLL agrees that it will enlist its efforts to secure a satisfactory purchaser(s) for the Properties, and if JLL deems it necessary, JLL may seek the cooperation of other licensed real estate brokers representing potential purchasers.

3. JLL shall prepare a marketing brochure or offering package which must be approved by us prior to its distribution. All advertising, whether prepared, or issued by JLL, or by us, shall identify JLL as our exclusive agent for the Properties.

4. During the term of this agreement, we will refer to JLL all inquiries and offerings received by us with respect to the Properties, regardless of the source of such inquiries or offerings, and all negotiations shall be conducted solely by JLL or under JLL's direction or shall involve JLL, subject to our review and final approval.

5. JLL's commission, to be paid by Seller in connection with the sale of 90 Nassau Street, will be computed based upon the 2.75% of the gross sales price, whether such sale is effected by JLL or by Seller. Commissions will be due and payable as, if and when title actually passes.

JLL's commission, to be paid by Seller in connection with the sale of 385 Greenwich Street, will be computed based upon the 3.25% of the gross sales price, whether such sale is effected by JLL or by Seller. Commissions will be due and payable as, if and when title actually passes.

6. JLL agrees within fifteen (15) business days after the expiration of the listing to provide Seller with a list of no more than fifteen (15) names of persons or entities who during the term have: (a) inspected the Properties, (b) been contacted by JLL regarding the sale of any of the Properties, or (c) offered to purchase the Properties. If within 180 days after the expiration or earlier termination of the listing term a contract is signed or negotiations continue and ultimately lead to a signed contract for the sale of the Properties to a person on said list (or an entity with whom said person is affiliated in any way), JLL shall be entitled to the commissions provided for in paragraph five (5) of this agreement.

7. In the event JLL cooperates with another licensed real estate broker, before working with such broker, JLL will inform such broker that it must look to its client for any and all compensation which may become due to it for the proposed transaction. In no event shall JLL be liable for the failure to obtain such other broker's agreement to look solely to its client for payment of any compensation in connection with the proposed transaction.

8. We hereby agree that JLL is hereby authorized to disclose to any prospective purchaser any information in its possession regarding the presence of toxic, contaminated or hazardous substances or conditions at the Properties; (ii) to make available to JLL and all prospective purchasers all inspection reports in our possession pertaining to the presence of such substances or conditions; and (iii) that JLL is hereby authorized to disclose to any prospective purchaser any information in its possession regarding the presence of such substances or conditions.

9. We acknowledge that JLL may represent potential purchasers and investor prospects and we hereby consent to such dual representation, provided that such dual representation is disclosed to us by JLL in writing (including by e-mail).

10. Seller understands that JLL may be requested by potential purchasers to solicit offers from lenders for financing a Transaction with respect to the Properties and that JLL may, in addition to its representation of Seller hereunder, represent one or more prospective purchasers in obtaining such financing. Seller consents to such services by JLL as long as JLL discloses any such potential relationship to Seller; provided, however, Seller shall not be obligated to pay any fees or commissions to JLL in connection with such financing, all of which shall be the sole responsibility of the purchaser.

11. In the event either party shall commence litigation against the other party to enforce its rights under this agreement, the party prevailing in such litigation shall be entitled to recover from the other party the costs and expenses (including reasonable attorneys' fees) thereby incurred.

12. We hereby represent that we are the fee owner of the Properties and have the right to sell same as contemplated hereby. The undersigned signatories also represent that they are duly authorized to execute this document on behalf of the entity indicated.

13. We hereby consent to JLL's publicizing its role in any transaction we enter into, subject to our reasonable editorial approval of such publicity.

14. We agree to provide JLL, upon or prior to closing, with a complete copy of any executed purchase and sale agreement or other transaction agreement for the Properties when signed by the party transacting with us and a copy of the closing statement for JLL's records, which shall be treated as confidential.

15. This agency shall be binding upon the parties hereto, their respective affiliates, partners, successors and assigns.

16. Neither party shall be liable to the other for, and each party hereby waives any and all rights to claim against the other, any special, indirect, incidental, consequential, punitive or exemplary damages in connection with this Agreement, including, but not limited to, lost profits, even if such party has knowledge of the possibility of such damages. Notwithstanding the foregoing, in no event shall JLL's liability to us exceed the fees paid to JLL pursuant to this agreement.

If the foregoing accurately sets forth our agreement, please sign and return the enclosed copies of this letter.

Very truly yours,

90 Nassau Street LLC & 385 Greenwich Street LLC

("Seller")

By *[signature]*

Name: Randal Lindi

Title: Managing member

Agreed: Randal Gindi  *[signature]*

JONES LANG LASALLE AMERICAS, INC.

By  *[signature]*

Name:  Jonathan Hageman

Title:   Managing Director

2