UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 25-40464-NHL |
| | ) |
| ZRG, INC., | ) Case No. 25-41126-NHL |
| 90 NASSAU STREET LLC, | ) |
| | ) Case No. 25-41127-NHL |
| 385 GREENWICH STREET LLC | ) |
| | ) Jointly Administered |
| Debtors. | ) |

### DECLARATION OF JONATHAN HAGEMAN IN SUPPORT OF RESPONSE OF JONES LANG LASALLE AMERICAS, INC. TO DEBTORS' POST-CONFIRMATION OMNIBUS OBJECTION TO VARIOUS CLAIMS

I, Jonathan Hageman, hereby declare, to the best of my knowledge, information, and belief, as follows:

1. My name is Jonathan Hageman. I am over the age of eighteen (18) years, am of sound mind and am in all respects competent to make this declaration. I have never been convicted of a crime and am in no way disqualified from making this declaration. I have personal knowledge of the facts stated in this declaration, which facts are true and correct.

2. I am a Managing Director of Jones Lang LaSalle Americas, Inc. ("JLL") in the JLL Capital Markets Group. I submit this declaration in support of JLL's Response to Debtors' Post-Confirmation Omnibus Objection to Various Claims (the "Response").

3. I negotiated and signed JLL's November 17, 2023 letter agreement (the "Agreement") with 90 Nassau Street, LLC ("Nassau") and 385 Greenwich Street LLC ("Greenwich" and, together with Nassau, the "Debtors"), a true and correct copy of which is attached hereto as Exhibit A.

4. As set forth in the Agreement, JLL was retained by the Debtors to serve as the Debtors' sole and exclusive agent to market and sell the real properties located at 90 Nassau Street in New York, New York (the "Nassau Property") and 385 Greenwich Street in New York, New York (the "Greenwich Property, and together with the Nassau Property, collectively, the "Properties").

5. Pursuant to the Agreement, I and other JLL personnel marketed the Properties to numerous entities, including New Aim Realty, LLC ("New Aim") and provided services to the Debtors through their March 6, 2025 bankruptcy filing that yielded over a dozen offers for the Nassau Property.

1

6. On Nassau's behalf, JLL began discussions with New Aim regarding the purchase of the Nassau Property and facilitated New Aim's visits to the Nassau Property.

7. In April 2024, New Aim made an offer to purchase the Nassau Property. Thereafter, I continued to work with Nassau and New Aim to address New Aim's due diligence and inspection requests and to facilitate the furthering of the sale and purchase process.

8. Following Nassau's March 6, 2025 bankruptcy filing and through August 1, 2025, New Aim continued to contact me on multiple occasions to facilitate its access to the Nassau Property. I continued to coordinate access to the Nassau Property as previously directed by Nassau and/or its managing agent.

9. At no time prior to either Nassau's bankruptcy filing or the July 11, 2025 confirmation of the Debtors' chapter 11 plan did the Debtors provide notice of their intent to terminate the Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 14, 2025
New York, New York

_Jonathan Hageman_
Jonathan Hageman

# Exhibit A



November 17th, 2023

Jones Lang LaSalle Americas, Inc.
330 Madison Avenue
New York, New York 10017

**Re: : 90 Nassau Street (Block: 78 / Lot: 43), & 385 Greenwich Street (Block: 188 / Lot: 9), New York, New York (the "Properties")**

Ladies and Gentlemen:

We, the undersigned ("Seller"), hereby appoint Jones Lang LaSalle Americas, Inc. ("JLL") as our sole agent and grant to JLL the exclusive right to sell all or any portion of or interest in the above referenced Properties**.**

JLL's appointment as our sole and exclusive agent shall be upon the following terms and conditions:

1. The term of this agreement shall commence on the date hereof and shall continue until April 17th, 2024 and shall thereafter continue for successive monthly periods until one party gives to the other 30 days written notice of cancellation. Each party will have the right to terminate this agreement without cause upon thirty (30) days prior written notice to the other party for any reason or no reason.

2. JLL agrees that it will enlist its efforts to secure a satisfactory purchaser(s) for the Properties, and if JLL deems it necessary, JLL may seek the cooperation of other licensed real estate brokers representing potential purchasers.

3. JLL shall prepare a marketing brochure or offering package which must be approved by us prior to its distribution. All advertising, whether prepared, or issued by JLL, or by us, shall identify JLL as our exclusive agent for the Properties.

4. During the term of this agreement, we will refer to JLL all inquiries and offerings received by us with respect to the Properties, regardless of the source of such inquiries or offerings, and all negotiations shall be conducted solely by JLL or under JLL's direction or shall involve JLL, subject to our review and final approval.

5. JLL's commission, to be paid by Seller in connection with the sale of 90 Nassau Street, will be computed based upon the 2.75% of the gross sales price, whether such sale is effected by JLL or by Seller. Commissions will be due and payable as, if and when title actually passes.

   JLL's commission, to be paid by Seller in connection with the sale of 385 Greenwich Street, will be computed based upon the 3.25% of the gross sales price, whether such sale is effected by JLL or by Seller. Commissions will be due and payable as, if and when title actually passes.

6. JLL agrees within fifteen (15) business days after the expiration of the listing to provide Seller with a list of no more than fifteen (15) names of persons or entities who during the term have: (a) inspected the Properties, (b) been contacted by JLL regarding the sale of any of the Properties, or (c) offered to purchase the Properties. If within 180 days after the expiration or earlier termination of the listing term a contract is signed or negotiations continue and ultimately lead to a signed contract for the sale of the Properties to a person on said list (or an entity with whom said person is affiliated in any way), JLL shall be entitled to the commissions provided for in paragraph five (5) of this agreement.

7. In the event JLL cooperates with another licensed real estate broker, before working with such broker, JLL will inform such broker that it must look to its client for any and all compensation which may become due to it for the proposed transaction. In no event shall JLL be liable for the failure to obtain such other broker's agreement to look solely to its client for payment of any compensation in connection with the proposed transaction.

8. We hereby agree that JLL is hereby authorized to disclose to any prospective purchaser any information in its possession regarding the presence of toxic, contaminated or hazardous substances or conditions at the Properties; (ii) to make available to JLL and all prospective purchasers all inspection reports in our possession pertaining to the presence of such substances or conditions; and (iii) that JLL is hereby authorized to disclose to any prospective purchaser any information in its possession regarding the presence of such substances or conditions.

9. We acknowledge that JLL may represent potential purchasers and investor prospects and we hereby consent to such dual representation, provided that such dual representation is disclosed to us by JLL in writing (including by e-mail).

10. Seller understands that JLL may be requested by potential purchasers to solicit offers from lenders for financing a Transaction with respect to the Properties and that JLL may, in addition to its representation of Seller hereunder, represent one or more prospective purchasers in obtaining such financing. Seller consents to such services by JLL as long as JLL discloses any such potential relationship to Seller; provided, however, Seller shall not be obligated to pay any fees or commissions to JLL in connection with such financing, all of which shall be the sole responsibility of the purchaser.

11. In the event either party shall commence litigation against the other party to enforce its rights under this agreement, the party prevailing in such litigation shall be entitled to recover from the other party the costs and expenses (including reasonable attorneys' fees) thereby incurred.

12. We hereby represent that we are the fee owner of the Properties and have the right to sell same as contemplated hereby. The undersigned signatories also represent that they are duly authorized to execute this document on behalf of the entity indicated.

13. We hereby consent to JLL's publicizing its role in any transaction we enter into, subject to our reasonable editorial approval of such publicity.

14. We agree to provide JLL, upon or prior to closing, with a complete copy of any executed purchase and sale agreement or other transaction agreement for the Properties when signed by the party transacting with us and a copy of the closing statement for JLL's records, which shall be treated as confidential.

15. This agency shall be binding upon the parties hereto, their respective affiliates, partners, successors and assigns.

16. Neither party shall be liable to the other for, and each party hereby waives any and all rights to claim against the other, any special, indirect, incidental, consequential, punitive or exemplary damages in connection with this Agreement, including, but not limited to, lost profits, even if such party has knowledge of the possibility of such damages. Notwithstanding the foregoing, in no event shall JLL's liability to us exceed the fees paid to JLL pursuant to this agreement.

If the foregoing accurately sets forth our agreement, please sign and return the enclosed copies of this letter.

Very truly yours,

90 Nassau Street LLC & 385 Greenwich Street LLC

("Seller")

By _[signature]_

Name: Randal Gindi

Title: Managing member

Agreed: Randal Gindi  /s/

**JONES LANG LASALLE AMERICAS, INC.**

By  /s/
Name:   Jonathan Hageman
Title:   Managing Director

2